OLIVER REFINING CO. v. ASPEGREN et al.

(Supreme Court, Appellate Division, First Department. November 8, 1912.)

1. APPEAL AND ERROR (§ 866*)—QUESTIONS REVIEWABLE—WITHDRAWAL OF CASE FROM JURY—QUESTIONS OF FACT.

Where, at the close of the trial, the court, with the acquiescence of both parties, withdrew the case from the jury and directed a verdict, there are no disputed questions of fact to be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3467–3475; Dec. Dig. § 866.*]

2. BROKERS ( 39*)—COMPENSATION—"COMMISSION."

The idea of the word "commission" involves the meaning that a sum of money is paid to an agent for effecting a sale to a third person; and, while it is not customary for a seller to pay a commission to a purchaser, it is competent for a seller to offer a purchaser a rebate and call

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
137 N.Y.S.—67

it a commission; but, where that is intended, the expression of the intention of the parties must be clear.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 37, 42, 64; Dec. Dig. § 39.*

For other definitions, see Words and Phrases, vol. 2, pp. 1303, 1304.]

3. BROKERS (§ 39*)—CONTRACTS—COMMISSION PAYABLE TO PURCHASER.

An owner of an oil refining plant offered to sell the same on specified terms, and added that, if a sale was made, he would pay to the purchaser a specified commission. The proposition was not accepted within the time specified for acceptance. Several months later the purchaser offered to purchase the property for a specified price, "other conditions as per option given * * * previously." The proposition was accepted by the owner, and the agreement between the parties was reduced to writing; but such agreement was silent on the subject of commission. *Held,* that the purchaser was not entitled to a commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 37, 42, 64; Dec. Dig. § 39.*]

4. CONTRACTS (§ 245*)—CONTRACT REDUCED TO WRITING—EFFECT OF PRIOR NEGOTIATIONS.

A written agreement, purporting to cover the whole subject of the obligations of each party to the other, supersedes all previous negotiations between the parties.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1129, 1130; Dec. Dig. § 245.*]

5. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CASE ON APPEAL.

Where both parties on the trial acquiesced in the disposition of the case of a matter of law, and there is no dispute of fact, the Appellate Division may, under Code Civ. Proc. § 1317, as amended by Laws 1912, c. 380, award such judgment as justice requires.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Trial Term, New York County.

Action by the Oliver Refining Company against Adolph Aspegren and another. From a judgment entered on a directed verdict for defendants, plaintiff appeals. Reversed, and judgment entered for plaintiff.

See, also, 136 N. Y. Supp. 1143.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Henry W. Baird, of New York City, for appellant.

Benno Lewinson, of New York City, for respondents.

SCOTT, J. The only question raised on this appeal is as to the propriety of the allowance by the court of certain counterclaims in behalf of defendants. At the close of the trial the court, with the acquiescence of both parties, withdrew the case from the jury and directed a verdict. There are, therefore, no disputed questions of fact to be considered.

[1] The plaintiff was in the year 1905 the owner of an oil refining plant at Portsmouth, Va., which it wished to dispose of, and to that end addressed a letter to defendants, under date of October 6, 1905, offering to said defendants "the option of two weeks from date to

rent or buy the refinery of the Oliver Bros. Refining Company at Portsmouth, Va., as follows: If bought on or before the expiration of this option, the price to be $135,000. If rented for one year, the rent to be $14,000, with the option of buying at the expiration of nine months from this date at $140,000." There followed a general description of the property offered. The letter concluded as follows: "If sale is made, we to pay you 2½ per cent. commission." This proposition was never accepted, and the time fixed for the duration of the option expired.

Thereafter the defendants made a counter proposition, offering a rental of $13,500 per annum from November 5, 1905, with the option of purchase for nine months at $135,000. This was not accepted; but the defendant hired the plant and property at $13,500 per annum, and remained in possession until July, 1906, when negotiations were reopened for a sale. Defendants' offer then was to purchase the plant at $125,000, to which plaintiff replied, noting the fact that the price was less than had previously been asked, and saying: "We feel that the property should net us $125,000 clear." This was on July 4, 1906. On July 6th the defendants wrote, confirming their offer of $125,000, to be paid $25,000 in cash and $100,000 in bonds. They offered to buy the supplies on hand for cash, and to make a contract to refine plaintiff's crude oil upon conditions and in the way previously agreed upon. The letter contains this clause, upon which defendants base their claim for commissions: "Other conditions as per option given us previously." On July 7th plaintiff wrote, accepting the offer of $100,000 in bonds and $25,000. A few days later, on July 17, 1906, a formal agreement was entered into between plaintiff and defendants, wherein defendants undertook to organize a corporation to take the property and execute a mortgage, and provided that payment should be made as follows: $25,000 in cash and $100,000 in bonds of the company to be organized. The agreement contained a number of clauses and conditions, but made no reference to the commissions now claimed by defendants. When it came to taking title under this agreement, the defendants made certain claims, including a claim to commissions. These the plaintiff declined to accede to, but, in order not to delay the transfer, entered into an agreement that all the matters then in dispute, including defendants' claim to a commission, be "hereafter adjusted between Aspegren & Co. and the Oliver Bros. Refining Company." It is not disputed that defendants were the real purchasers of the property; the Portsmouth Refining Company being organized merely to facilitate the transfer and to execute the bonds given in payment.

[2, 3] It is unusual, and quite contrary to the customary method of doing business, for a seller to pay a commission to a purchaser. The very idea of a commission involves the meaning that a sum of money is paid to an agent for effecting a sale to a third party. Doubtless it is competent for a seller to offer a purchaser a rebate or deduction from a stated price, and to call it a commission; but, if this is intended, the expression of the intention should be quite clear. Whether this is what plaintiff intended when it wrote the first

letter of October 6, 1905, is not at all certain; but at all events it was coupled with a proposition which was never accepted. When defendants assumed the position of prospective purchasers, and negotiated for a sale to themselves at a reduced price, the offer of a commission included in the original option fell, and could not be deemed to have been revived, except by clear and unmistakable expressions. The clause in defendants' letter of July 6th, "Other conditions as per option given us previously," which was never in terms accepted or agreed to by plaintiff, cannot be said to constitute a clear agreement de novo to pay any sum by way of rebate or commissions.

[4] Finally, the agreement between the parties was reduced to formal shape, either by defendants' lawyer, or at least with his approval. That agreement purports to cover the whole subject of the obligations of each party to the other, and must, on well-established principles, be deemed to have merged and superseded all previous negotiations between the parties. It was entirely silent on the subject of commissions, but, on the contrary, provided that the whole purchase price should be paid to plaintiff in money and bonds. We are therefore of the opinion it was error to allow a recovery by defendants for the commissions claimed.

As to the other counterclaim allowed by the court, and which is for a small sum, the record comes to us in such shape that we are unable to say that it was improperly allowed.

[5] Our conclusion is that the judgment is erroneous as to the counterclaim allowed for commissions. Its disallowance will result in a judgment for plaintiff; and, as there is no dispute of fact, and both parties on the trial acquiesced in the disposition of the case as a matter of law, we may proceed to award judgment as justice requires. Code Civ. Pro. § 1317, as amended by Laws 1912, c. 380.

The judgment appealed from will therefore be reversed, with costs and disbursements to the appellant, and judgment entered in favor of the plaintiff for such sum, with costs, as upon settlement of the order may be found to be due.

Settle order on notice. All concur.