## MITCHELL v. BOYER et al.

(Supreme Court, Appellate Division. First Department. February 6, 1914.)

1. CORPORATIONS (§ 141*)—CORPORATE STOCK—BLANK CERTIFICATE.

Corporate stock certificates are quasi negotiable, and a blank transfer of a certificate, with an irrevocable power of attorney to transfer, signed by the person who appears by the certificate to be the owner, confers on such owner apparent title to the stock so as to entitle a bona fide purchaser to the stock as against the real owner, who is estopped to assert title.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 477; Dec. Dig. § 141.*]

2. PRINCIPAL AND AGENT (§ 105*)—AUTHORITY OF AGENT—PAYMENT TO AGENT —VALIDITY.

Plaintiff delivered a stock certificate for sale to S., who was a customer and made his headquarters at the office of defendants, stockbrokers. When S. presented the certificate to defendants for sale, he was advised to surrender it to the corporation and have a new certificate issued in plaintiff's name, which he did, after which plaintiff came to defendants' office, saw S., and signed a form of transfer with a power of attorney in the usual form, though not on the certificate, which, with the assignment, was then delivered to defendants, who sold the same and credited the proceeds to S., whose account was thereafter closed. *Held*, that S. was thereby created plaintiff's agent to sell, and, in the absence of instructions from her as to the disposition of the proceeds, defendants were justified in paying the same to him as plaintiff's agent, and hence were not liable to her therefor.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298– 310, 374; Dec. Dig. § 105.*]

Laughlin and McLaughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Elizabeth W. Mitchell against Philip Boyer and others, doing business under the firm name of Boyer, Griswold & Co. A verdict was directed in favor of plaintiff, and defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John G. Milburn, Jr., of New York City, for appellants.
George E. Miner, of New York City, for respondent.

SCOTT, J. The plaintiff, in December, 1910, was the owner of a certificate representing 10 shares of the preferred stock of the American Locomotive Company. This certificate stood in the name of Frank W. Thomas, who had signed on the back thereof an assign-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment to plaintiff, with a power of attorney to transfer the stock on the books of the company. At this time one W. W. Sayles was a customer of defendants, who were a firm of stockbrokers. It does not appear, and is not claimed, that Sayles occupied any other relation to defendants than that of customer. He was jointly interested with one Scoville in an account kept in the name of the latter. In December, 1910, plaintiff delivered the aforesaid certificate of stock to Sayles, and he presented it to defendants to be sold. There is no suggestion that Sayles procured the certificate from plaintiff by fraud or any criminal act. Indeed the irresistible inference from the evidence is that she delivered the certificate to Sayles for the purpose of having it sold, and there is no suggestion or claim to the contrary. When Sayles presented the certificate to defendants for sale he was advised that, before it would be salable, it would be necessary that it should be surrendered to the company and a new certificate issued in the name of plaintiff. This was accordingly done, and the new certificate issued in plaintiff's name. She then came to defendants' office and saw Sayles and signed a form of transfer with a power of attorney in the usual form. This was not indorsed on the back of the certificate but was contained in a separate paper, although there is no question but that it was intended to apply to and to accompany the certificate of stock which had been issued to plaintiff. This certificate and the assignment were then delivered to defendants who sold it in due course and received the proceeds which, by Sayles' direction, were credited upon his account. It does not appear that Sayles at the time was indebted to defendants. Sayles drew upon the account from time to time, and the account was finally closed out on or before the 1st day of April, 1911. On April 13, 1911, plaintiff, for the first time, made a demand on defendants for the proceeds of the sale of the stock. Up to that time it does not appear that plaintiff had had any personal transaction with any member of defendants' firm. Her transactions were all with Sayles, who in turn dealt with defendants. Upon this state of facts both sides moved for the direction of a verdict, and the court did so direct in favor of the plaintiff. The correctness of this ruling is challenged by this appeal.

[1] It would serve no good purpose to review at length the long line of decisions in this state which have established the quasi negotiability of stock certificates accompanied by duly executed assignments, and the limitations within which such quasi negotiability is confined. It is thoroughly well settled that a blank transfer of a certificate of stock, with an irrevocable power of attorney to transfer, signed by the person who appears by the certificate to be the owner, confers upon the holder of the certificate apparent title to the stock, and that the bona fide purchaser of such stock from such holder can hold the stock against the real owner, who is estopped from asserting his title. McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341; Merchants' Bank v. Livingston, 74 N. Y. 223; Brady v. Mount Morris Bank, 65 App. Div. 212, 73 N. Y. Supp. 532; Talcott v. Standard Oil Co., 149 App. Div. 694, 134 N. Y. Supp. 617. The exceptions to or limitations of the rule where the certificate and assignment are obtained by fraud or crime, or where an agent exceeds his authority

(Knox v. Eden Musee, 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 Am. St. Rep. 700; Hall v. Wagner, 111 App. Div. 70, 97 N. Y. Supp. 570; Kilmer v. Hutton, 131 App. Div. 625, 116 N. Y. Supp. 127), are not applicable to the present case, because there is no evidence that Sayles obtained the certificate and assignment feloniously, or that, in selling it, he did not carry out plaintiff's wishes.

[2] The defendants, therefore, were justified, upon fairly established principles, in executing Sayles' order to sell the stock and in paying over the proceeds to him by crediting it to his account, whence he could have drawn it at any moment. This was precisely equivalent to paying him the proceeds in hand; and, if that course had been adopted, it would scarcely have been contended by any one that, by such payment, defendants had not exonerated themselves from all liability. Plaintiff, by delivering the certificate to Sayles, with a transfer such as she signed, clothed him with indicia of title, which entitled defendants to deal with him as the owner. Whether owner or not, he certainly was thereby created her agent to sell, and, in the absence of any instructions from her as to the disposition to be made of the proceeds, the defendants were justified in paying them to her agent. That the transfer and power of attorney signed by plaintiff was not indorsed on the back of the certificate, but contained in a separate paper, is immaterial (Smith v. Savin, 141 N. Y. 315, 36 N. E. 338; Talcott v. Standard Oil Co., supra); and, as has already been said, it is not disputed that the assignment signed by plaintiff was intended to apply to the certificate belonging to her and standing in her name. Upon the undisputed facts a verdict should have been directed in favor of defendants, and the court erred in making a direction in plaintiff's favor.

The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to the appellant to abide the event.

INGRAHAM, P. J., and CLARKE, J., concur.

LAUGHLIN, J. (dissenting). The action is to recover damages for the conversion of the proceeds of the sale of 10 shares of the capital stock of the American Locomotive Company, preferred, which were owned by the plaintiff and sold by the defendants to the firm of Carlisle, Mellick & Co., for the sum of $1,056.25, on the 28th day of December, 1910. On the 27th day of April, 1908, a certificate for 10 shares of the preferred stock of the American Locomotive Company was duly issued to one Thomas, and on the 30th day of the same month he sold and assigned the same to the plaintiff, and indorsed an assignment thereof to her on the certificate. She was acquainted with one Sayles, whom she supposed to be in the employ of the defendants, who were conducting a brokerage business under the name of Boyer, Griswold & Co. Sayles was not in fact an employé of the defendants, but he made their office his headquarters, and she had had various communications with him over their telephone. The plaintiff called at the office of the defendants on the 28th day of December, 1910, with a view to having them sell this stock for her, and she delivered the certificate to Sayles in the private office of the defendants. Sayles

presented it to one of the defendants, and they sold it to Carlisle, Mellick & Co., but the purchaser desired to have the certificate surrendered and transferred before delivery, and the defendants caused it to be presented and surrendered to Harvey Fisk & Sons, the transfer agents of the American Locomotive Company, whereupon a new certificate was issued in the name of the plaintiff for a like number of shares, and it is to be inferred from the evidence, which is not entirely clear on the point, that the defendants caused it to be assigned in blank to the purchaser, pursuant to a power of attorney which the plaintiff executed in the office of the defendants on the day in question. It is recited in the power of attorney that the plaintff sold and delivered the stock to the firm of Carlisle, Mellick & Co., and that she constituted one Phelps, who was in the employ of the defendants, as her attorney in fact to execute all necessary acts of assignment and transfer to consummate the sale. She did not, however, assign the substituted certificate of stock issued in her name, but it is to be inferred from the evidence that Phelps, acting under the power of attorney, assigned it in her name.

The defendants knew that the stock belonged to the plaintiff, and one of them in the name of the firm guaranteed her signature to the power of attorney before it was acted upon. At the time in question the defendants were carrying a speculative account in the name of one Scoville, in which Scoville and Sayles were jointly interested. The defendants neither delivered the proceeds of the sale of the stock to the plaintiff, nor to Sayles for her, but by his direction, and without authority from her, they credited the same on the Scoville account, evidently to margin the same, and charged their commissions to said account. With respect to this one of the defendants testified as follows:

"I did not make any inquiry of Miss Mitchell why we should do that. I did not inquire of anybody why we should place the proceeds of Miss Mitchell's certificate to the account of Scoville. I acted on Mr. Sayles' direction alone. We never knew Miss Mitchell in the case at all; it was entirely Mr. Sayles."

According to the testimony of the plaintiff, the name of the purchasing firm was filled in the power of attorney when she executed it, and the power of attorney was not attached to any certificate of stock; and, although that is controverted, the fact must be deemed to have been found in favor of the plaintiff.

At the close of the evidence counsel for plaintiff moved for the direction of a verdict, and counsel for defendants moved for the dismissal of the complaint, and thereupon the court directed the verdict in favor of the plaintiff. The motion for the dismissal of the complaint was not withdrawn, and there was no request in behalf of the defendants for the submission of any question of fact to the jury. In those circumstances the controverted questions of fact are deemed to have been submitted to the court, and to have been found in favor of the plaintiff. Oliver Refining Co. v. Aspegren, 152 App. Div. 877, 137 N. Y. Supp. 1057; Porges v. U. S. Mortgage & Trust Co., 203 N. Y. 181, 96 N. E. 424; Sweetland v. Buell, 164 N. Y. 541, 58 N. E. 663, 79 Am. St. Rep. 676. But on any view of this evidence, I am of opinion that the plaintiff was entitled to recover. Through Sayles the defendants acted as her agents in selling the stock, and it was their

duty to return the proceeds to her, or, in the most favorable view, to deliver the proceeds to Sayles for her. They were without evidence to show that Sayles was authorized to divert the proceeds to his own use, or to the use of himself and Scoville, and, in appropriating the proceeds to the credit of the Scoville account and refusing to pay the same over to plaintiff on demand, they were guilty of conversion.

I, therefore, vote for affirmance.

McLAUGHLIN, J., concurs.

