## PELTZ v. ATLANTIC ELECTRICAL SUPPLY CORP.

### No. 1300.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 26, 1953.

Decided Feb. 26, 1953.

Charles S. Sures, Washington, D. C., for appellant.

Nathan L. Silberberg, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

This was a suit for the balance due on electrical supplies and materials. Defendant denied the sale and filed a counterclaim for commissions due on prior transactions with plaintiff. The trial judge, sitting without a jury, found for the appellee on its claim for $527.12, deducting therefrom $113.28 allowed appellant on his counterclaim, and ordered judgment in the net sum of $413.84.

The first assignment of error is that the trial court found that the merchandise was sold to defendant and that this finding was contrary to the weight of the evidence. At trial there were only two witnesses, Samuel Lessans, an officer of plaintiff corporation, and defendant Peltz, an electrical contractor. Peltz approached appellee, an electrical supply house, for the purpose of buying electrical merchandise on credit. Mr. Lessans, who is also the credit manager for the corporation, refused to sell to him on open account because of his credit rating. The parties then entered into an agreement whereby Peltz would receive the needed merchandise for a particular job, and Atlantic Supply would be paid directly by the builders out of money due Peltz on his contracts. The exact nature of this agreement was the sole issue in the trial court. Appellant maintains that the supplies were sold to Occidental Builders, for whom Peltz was doing electrical work at that time. Occidental Builders went into bankruptcy, and appellee contends that the sales of materials were made to appellant, and that Occidental Builders were only relied on to pay appellee out of funds due on appellant's contract.

At trial various invoices, statements, letters, and packing slips were introduced into evidence, in addition to the testimony of the two witnesses. It was on the basis of this evidence that the trial court found for the appellee. This finding had ample support in the evidence. There was sufficient evidence of a sale to appellant and we will not reweigh the sharply conflicting evidence and substitute our opinion for that of the trial judge on this question of fact.

Appellant's second assignment of error is that the judgments in favor of appellee on the complaint and for appel-

lant on the counterclaim were incorrect because the claims of the parties were "mutually exclusive." He argues that if the merchandise had been sold to Peltz, as the trial court found, then Peltz as buyer could receive no commission, and conversely, if Peltz could receive a commission on the sales, he could not be the buyer. The basis of his argument is that only a salesman or an agent can receive a commission, while a purchaser receives a discount. Appellant quotes Oliver Refining Co. v. Aspegren, 152 App.Div. 877, 137 N.Y.S. 1057, 1059, in support of his argument, as follows:

"It is unusual, and quite contrary to the customary method of doing business, for a seller to pay a commission to a purchaser. The very idea of a commission involves the meaning that a sum of money is paid to an agent for effecting a sale to a third party. Doubtless it is competent for a seller to offer a purchaser a rebate or deduction from a stated price, and to call it a commission; but, if this is intended, the expression of the intention should be quite clear."

But there the court decided the case on another point, and did not lay down a test or standard as to what extent the intention must be expressed.

In Kelley, Maus & Co. v. Sibley, 7 Cir., 137 F. 586, 591, the court in discussing the word "commission" held that a sale had taken place and observed that the entire agreement must be studied in order to determine what was the actual nature of the agreement. The court said, "the misuse of the term [commission] cannot convert into an agency what was in fact a sale."

Here the transactions which were the basis of the complaint and of the counterclaim were separate. Appellee's claim covered materials used on the jobs of Occidental; the counterclaim was for commissions claimed on transactions with various builders other than Occidental. But these circumstances were by no means controlling. In the absence of an express and definitive agreement between the parties it was a question of fact for the court to determine what was the actual agreement between the parties and the use of the term "commission" would not be controlling. The ultimate question was one of fact on the whole evidence as to whether there had been a sale to Peltz.

Affirmed.